FILED

03/24/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs January 29, 2020

## STATE OF TENNESSEE v. WAYNARD QUARTEZ WINBUSH

**Appeal from the Criminal Court for Knox County**
**No. 102855   Bob. R. McGee, Judge**
**G. Scott Green, Judge[1]**

_____

### No. E2018-02136-CCA-R3-CD

_____


Defendant, Waynard Quartez Winbush, was convicted of various drug offenses and sentenced to an effective sentence of twenty-three years.  On appeal, Defendant argues that: (1) he received ineffective assistance of counsel; (2) the trial court erred by failing to sever prejudicial offenses; (3) the trial court erred by failing to grant a new trial based on prosecutorial misconduct; (4) the trial court erred by failing to include lesser-included offenses in the jury instructions; (5) the trial court erred by failing to grant a new trial based on newly discovered evidence; (6) the trial court erred by failing to dismiss the case based on a violation of Defendant's right to a speedy trial; (7) the trial court erred by failing to grant a new trial after failing to rule on Defendant's pretrial motions; (8) the trial court erred by allowing the State to improperly introduce evidence; (9) the trial court erred by failing to grant a new trial based on witness perjury; (10) the evidence was insufficient to sustain the convictions; (11) the trial court erred by instructing the jury on the lesser-included offense of simple possession for conspiracy; and (12) the trial court erred by failing to grant a new trial based on cumulative errors.  After conducting a full review of the record, we determine that Defendant is entitled to relief from his convictions for conspiracy in Counts 3 and 4 because the instructions given to the jury did not match the charges in the presentment, and we vacate Defendant's convictions as to those counts.  As to the remaining arguments, we find Defendant is not entitled to relief.  Consequently, we reverse the judgments of the trial court in part and affirm the judgments in part.

---

[1] This matter was tried before a Knox County Jury from Aug. 10, through Aug. 16, 2016, the Honorable Bob R. McGee presiding.  In addition, Judge McGee presided at all pre-trial matters and sentencing.  By post-trial, pro se motion filed on May 21 and May 24, 2018, Defendant requested that Judge McGee recuse himself from further proceedings. Judge McGee granted the motion and by Order of the Presiding Judge for the 6th Judicial District, Judge G. Scott Green presided at Defendant's Motion For New Trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Reversed in part and Affirmed in part and Remanded.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Sherif Giundi, Knoxville, Tennessee, for the appellant, Waynard Quartez Winbush.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Kenneth Irvine, Sean McDermott, and Hector Sanchez, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Statement of Facts and Procedural History*

The Knox County Grand Jury charged Defendant, along with multiple co-defendants, via presentment, with the following offenses:

| Count | Offense Charged |
|-------|-----------------|
| 1 | Conspiracy to possess with the intent to sell 150 grams or more of a Schedule I controlled substance (heroin) in a drug-free zone |
| 2 | Conspiracy to possess with the intent to deliver 150 grams or more of a Schedule I controlled substance (heroin) in a drug-free zone |
| 3 | Conspiracy to sell 150 grams or more of a Schedule I controlled substance (heroin) in a drug-free zone |
| 4 | Conspiracy to deliver 150 grams or more of a Schedule I controlled substance (heroin) in a drug-free zone |
| 5 | Conspiracy to possess with the intent to sell a Schedule II controlled substance (oxycodone) in a drug-free zone |
| 6 | Conspiracy to possess with the intent to deliver a Schedule II controlled substance (oxycodone) in a drug-free zone |

| | |
|---|---|
| 7 | Conspiracy to possess with the intent to sell a Schedule II controlled substance (oxymorphone) in a drug-free zone |
| 8 | Conspiracy to possess with the intent to deliver a Schedule II controlled substance (oxymorphone) in a drug-free zone |
| 15 | Failure to appear for arraignment for offense of driving without a valid license |
| 16 | Possession with intent to sell less than 15 grams of a Schedule I controlled substance (heroin) in a drug-free zone |
| 17 | Possession with intent to deliver less than 15 grams of a Schedule I controlled substance (heroin) in a drug-free zone |
| 18 | Possession with intent to sell less than 200 grams of a Schedule II controlled substance (oxycodone) in a drug-free zone |
| 19 | Possession with intent to deliver less than 200 grams of a Schedule II controlled substance (oxycodone) in a drug-free zone |
| 20 | Possession with intent to sell less than 200 grams of a Schedule II controlled substance (oxymorphone) in a drug-free zone |
| 21 | Possession with intent to deliver less than 200 grams of a Schedule II controlled substance (oxymorphone) in a drug-free zone |
| 23 | Destruction of evidence |
| 25 | Failure to appear for arraignment for offense of driving without a valid license |
| 26 | Failure to appear for arraignment for offense of criminal impersonation |

Counts 9 through 14, 22, and 24 of the presentment did not include charges against Defendant.  Counts 5 and 6 were dismissed prior to trial.

*Trial*

The case proceeded to trial and a jury found Defendant guilty of Counts 1-4, 7-8, 18-19, and 20-21. The jury acquitted Defendant on Counts 15-17, 23, and 25-26. Counts 2-4 and 7-8 were merged into Count 1. Count 19 was merged with Count 18, and Count 21 was merged with Count 20.[2] The trial court sentenced Defendant to 20 years' incarceration for each conviction in Counts 1-4 and 7-8, and 3 years for each conviction in Counts 18-19 and 20-21. The sentences in Counts 1-4 and 7-8 were run concurrently with each other. Additionally, the sentences in Counts 18 and 20 were run concurrently with each other, but consecutively to Count 1, for an effective sentence of 23 years.

The trial testimony established, Knoxville Police Department (KPD) Investigator Philip Jinks, recognized as an expert in the fields of drug and conspiracy investigations, learned about the drug operation that transported heroin from Detroit to Knoxville in this case in late 2012 or early 2013. The heroin involved in the investigation was a "brown-rocky-type substance," or black tar that looks like "a black[,] gummy substance." The heroin was not a type he had seen before. Being an experienced investigator, Investigator Jinks knew that people involved in the drug trade tried to hide who they were by renting vehicles and houses in other people's names, and paying people in cash or drugs. The dealers used multiple cell phones, called "burner phones," and did not use them for long periods of time. The dealers did "everything they [could] to avoid law enforcement contact and us[e] their real information." Dealers often used code when talking or texting each other. Oxycodone pills were known as "roxies," "blues," or "Rs." Oxymorphone pills were known as "opanas" or "moons." Dealers did not typically carry drug paraphernalia, needles, or filters with them, as they were not users.

Ohio State Highway Patrol Officer Jason Archer conducted a stop on January 3, 2013, of a vehicle containing Christopher Holloway, August Allen, and Nicole Ferris. During the stop, Officer Archer found a marijuana cigarette, 4.68 grams of heroin, and .52 grams of cocaine. He also found a bottle of white powder that was later identified as a cutting agent. Eventually, Investigator Jinks learned that the people in this vehicle were involved in drug transactions in the Knoxville area.

KPD Officer Joey Whitehead stopped a car on March 6, 2013 in Knoxville because the driver was not wearing a seatbelt. After the car stopped, the unidentified driver ran into a nearby apartment at Christenberry Heights on Dutch Valley Road in

---

[2] We note that the judgment forms do not reflect a sentence on each of the merged counts. The forms only indicate the count has been merged. "[T]he best practice is for the trial court to impose a sentence on each count and reflect the sentence on the respective uniform judgment document." *State v. Berry*, 503 S.W.3d 360, 365 (Tenn. 2015). In the event the greater conviction is reversed, it avoids the necessity of an additional sentencing hearing. *Id*.

Knoxville. Richard McFadden was a passenger in the vehicle. Officer Whitehead knocked on the door of the apartment, and Amanda Maples answered. Ms. Maples consented to a search of the apartment. Officer Whitehead observed a yellow folder in the apartment. The folder contained paperwork from Ohio regarding Mr. Holloway's arrest for drug trafficking. Officer Whitehead knew that Investigator Jinks had an ongoing drug investigation and reported the information to Investigator Jinks.

On March 25, 2013, Knox County Sheriff's Officer James Trout stopped Mr. McFadden at the Greyhound bus station. Mr. McFadden had marijuana, $9100 cash, and a set of digital scales on his person. Mr. McFadden was going to Detroit. Mr. McFadden indicated the money was from marijuana sales. Mr. McFadden consented to a search of his cell phone. Text messages consistent with the sale of heroin were found on the phone. In one text message, Mr. McFadden directed someone to the Adair Manor Apartments, and told them to "[c]all D." Ms. Maples confirmed that the $9100 belonged to Defendant.

During his investigation, Investigator Jinks heard the nicknames "Ooh" and "Nunu." At some point he learned that "Ooh" was Mr. Allen and that "Nunu" was Mr. McFadden. Eventually Investigator Jinks identified Coleman Strickland, Tim Ford, Nicole Farris, Joseph Green, Megan Huffaker, and Defendant as those involved in the drug conspiracy. The locations in Knoxville being used by Defendant and co-conspirators for dealing the drugs were 1313 New York Avenue, Adair Manor Apartments, an apartment on Dutch Valley Road, locations on Merchants Drive and Cedar Bluff Road, and 173 Chickamauga Avenue. Ms. Maples rented the house at 1313 New York Avenue. Defendant paid rent for the residence and provided Ms. Maples with heroin in exchange for placing the 1313 New York Avenue residence in her name.

Investigator Jinks employed Nicole Bryant as a confidential informant during his investigation. He paid Ms. Bryant $40 cash for each controlled buy. Each controlled phone call between Ms. Bryant, Mr. Allen, Mr. Green, and Defendant was recorded. Each controlled buy was monitored live and video recorded by police. The funds used to purchase the drugs were photocopied or photographed prior to each transaction, so the dollars could be identified by serial number if they were found during the course of the investigation.

On June 13, 2013, Ms. Bryant participated in a controlled buy from Mr. Allen. The buy was set up during a phone call to XXX-XXX-9692. Ms. Bryant went to the Adair Manor Apartments to complete the purchase. Investigator Jinks observed Mr. Allen and Mr. Green enter the apartment building. Ms. Bryant completed the purchase of

.16 grams of heroin described as a "bluish-grey, rocky substance."[3] The Adair Manor Apartments were less than 1000 feet from Adair Park and the Sue Clancy Greenway.[4]

On June 20, 2013, Investigator Jinks and Ms. Bryant conducted another controlled buy. Ms. Bryant met Mr. Allen at 1313 New York Avenue. When Ms. Bryant arrived, Mr. Allen was outside the residence. Testing confirmed that the drugs purchased by Ms. Bryant were .14 grams of "bluish-grey" heroin. After the buy, police officers followed Mr. Allen in a Chevrolet Trailblazer driven by Ms. Huffaker to a Christenberry Heights apartment, just off Dutch Valley Road.

On June 21, 2013, Investigator Jinks returned to the apartment at Christenberry Heights and observed Ms. Huffaker and Mr. Allen leave in the Trailblazer. He later observed Mr. Green was also in the Trailblazer. They stopped at a McDonald's where Investigator Jinks saw an unknown female get in the back of the vehicle and exit a short time later. Investigator Jinks requested that a marked patrol car conduct a stop of the vehicle, with a goal of identifying Mr. Allen, whom Investigator Jinks only knew as "Ooh" at that point. The vehicle was stopped. Mr. Allen was taken in to custody on an outstanding warrant from Ohio. At the time of the stop, Ms. Huffaker possessed $2500 in cash, and Mr. Green possessed $1500 in cash. Three of the $20 bills used in the June 20, 2013 controlled buy were among the cash found in Mr. Green's pocket.

Ms. Bryant informed Investigator Jinks that she attempted to contact Mr. Allen again on June 24, 2013 and that Mr. Allen's phone was answered by someone named "D." Investigator Jinks and Ms. Bryant made a controlled phone call to Mr. Green to talk about members of the conspiracy and when she could obtain drugs. On June 30, 2013, Defendant contacted Ms. Bryant and asked that she come pick him up at the Tanglewood Apartments. Defendant and Mr. Green were both present when she arrived, and she drove both of them to several places including a house off of Kim Watt Road. Defendant wanted Ms. Bryant to rent the house in her name, indicated that he would deposit $2500 in to Ms. Bryant's bank account to pay for it, and told her that he would pay the rent on the house. Ms. Bryant obtained the rental application from the owner. Ms. Bryant informed Investigator Jinks about Defendant's plans to rent the house.

Investigator Jinks learned that Ms. Maples had an outstanding arrest warrant and that she was staying at the Adair Manor Apartments. On June 28, 2013, Investigator

---

[3] Photographs of evidence from each controlled buy were entered at trial. The parties stipulated that the substance purchased during each controlled buy was heroin.

[4] Donna Roach, an employee of the Knox County KUB Geographic Information System, confirmed that each residence used during the conspiracy was located within 1000 feet of a park or school.

Jinks went to the Adair Manor Apartments to serve the warrant on Ms. Maples and observed Defendant driving a rental vehicle with Mr. Green as the passenger. Ms. Maples came out of the apartment and interacted with Mr. Green. Investigator Jinks approached with KPD Officer Adam Broome. Investigator Jinks attempted to arrest Ms. Maples and deal with Mr. Green, while Officer Broome spoke with Defendant. Investigator Jinks saw Defendant put his hands down by the side of his seat, and Investigator Jinks heard something hit the vehicle floorboard. Thinking it might be a weapon, Investigator Jinks ordered Defendant to put his hands up. Defendant did not have identification and gave Investigator Jinks a false name. Defendant was arrested on a driver's license offense. During the search of the vehicle, Investigator Jinks discovered a cell phone and battery next to the seat of the vehicle. He surmised that the sound he heard originated when Defendant took apart the battery and cell phone and dropped it next to the seat of the vehicle. Investigator Jinks inserted the battery back into the phone and turned it on. Investigator Jinks dialed the number, XXX-XXX-2960, listed under "D" in Ms. Maples's phone and the phone he found in the vehicle rang. Additional items found in the vehicle were a bag of trash, empty plastic bags, and a baby powder bottle with the top cut off. In all, five cell phones, including one with phone number XXX-XXX-2960, were found during the search of the vehicle. The XXX-XXX-2960 phone number was listed as "D" in numerous other phones already found during the investigation. The phone associated with number XXX-XXX-4396 was another of the phones found during the search. At the scene, several officers overheard Ms. Maples ask Mr. Green, "[W]hat's D going to jail for? What's D being arrested for?" Ms. Maples consented to a search of her apartment. Investigator Jinks found digital scales and drug paraphernalia, including a piece of cotton that appeared to have been used as a filter. The cotton had the same "bluish-grey" color of the heroin purchased by Ms. Bryant.

On July 2, 2013, Officer Jinks and Ms. Bryant placed a controlled phone call to number XXX-XXX-9692 and spoke to Defendant. While discussing the rental house, Defendant agreed to give Ms. Bryant "two grams" if she rented the house in her name. That same day, Investigator Jinks conducted a "trash pull" at 1313 New York Avenue where he found a utility bill in Ms. Maples's name, rubber gloves, packaging for a T-Mobile prepaid cell phone, a piece of paper with a list of phone numbers and the cost of each phone line, a plastic cover for a digital scale, a burnt spoon, a piece of straw, and receipts from stores located in Lansing, Michigan, and Findlay, Ohio. Investigator Jinks also found a small baggie that contained residue that field tested positive for heroin.

Investigator Jinks and Ms. Bryant made a controlled phone call to number XXX-XXX-5584 and spoke to Mr. Green on July 11, 2013. Ms. Bryant asked when "D" was coming back. Mr. Green informed her that "D" would be back the next day and "guessed" he would be bring something good back with him. On July 16, 2013, another controlled phone call was placed by Ms. Bryant to Mr. Green at the XXX-XXX-5584

number. Ms. Bryant told Mr. Green that she had been trying to reach Defendant. Mr. Green said that Defendant had not come back to Knoxville yet and that Mr. Green was out of the drug she was asking for, but suggested he could get Ms. Bryant some oxymorphone.

On July 21, 2013, Mr. Green called Ms. Bryant and requested a ride. She picked him up and dropped him off at an Econo Lodge on Merchant's Drive. Upon walking in to the hotel room, Ms. Bryant saw a lot of blue pills and between $10,000 and $20,000 in cash. Mr. Green told her that there was $20,000, and that he was taking the money on a Greyhound bus to Detroit.

On July 31, 2013, Investigator Jinks learned that Defendant was at Mr. Ford's residence at 173 Chickamauga Avenue. Investigator Jinks observed a white SUV with an out-of-state license plate pull into the driveway. Defendant got out of the SUV and entered the residence. After a few minutes, Defendant came back outside and left in the SUV. The same SUV was later seen at the residence of Mr. Strickland on Adcock Street. Investigator Jinks decided to arrest Defendant on outstanding warrants. Search warrants were obtained for Mr. Ford's and Mr. Strickland's residences.

During the search of Mr. Ford's home, officers found a baggie containing marijuana, drug paraphernalia, plastic baggies that indicated narcotics packaging, a ledger with items marked "M" and "H", a cell phone, and prescription bottles that contained a different number of pills from what was actually prescribed. Officers also found a note that appeared to be a speech that Mr. Ford had intended to say to Defendant. During the initial search, in total, officers also found 38 tablets of oxycodone, 28 tablets of oxymorphone, and 1.9 grams of marijuana. Mr. Ford arrived home after the search began. In a later interview, Mr. Ford indicated there was heroin in the house that police did not find during their initial search. Mr. Ford consented to another search, and officers found 4.7 grams of heroin hidden in a pill bottle inside a sock drawer.

Ms. Maples, Mr. Ford, and Ms. Huffaker all identified Defendant as "D", and as the person in charge. They each pled guilty to their involvement in the conspiracy. Ms. Maples and Ms. Huffaker each made multiple trips between Knoxville and Detroit to transport drugs. The drugs were delivered to 1313 New York Avenue. The drugs were stored in baby powder bottles. Each bottle held twenty to thirty grams of heroin. Two to three bottles arrived at a time. The bottles were transported using rental cars or Greyhound buses. The group would cut the top off the baby powder bottles to remove the drugs.

Ms. Maples used at least 300 grams of heroin for her personal use and sold at least another 200 grams during the time of the conspiracy. At the time of trial, she was serving

an eight-year sentence for convictions related to this case. Ms. Huffaker used approximately 600 grams of heroin in the time she knew Defendant and that Defendant personally gave her at least half of the 600 grams.

Defendant was in possession of large amounts of heroin, usually between thirty and eighty grams at any given time. On one occasion, Defendant threw "a little bit of blue powder substance" at Mr. Ford and told him that it was heroin. On another occasion, Defendant gave Mr. Ford 25 oxycodone pills and about one gram of heroin and asked Mr. Ford if he could "do anything with those." Mr. Ford understood that Defendant was asking him to sell drugs and agreed to sell them. Mr. Ford used envelopes and ledgers to keep track of money he owed to Defendant. Mr. Ford delivered the money to the property at 1313 New York Avenue. Mr. Ford gave Defendant at least "a couple thousand dollars" each time he delivered money. During one delivery, Defendant pulled a "big sack" of heroin out of his pocket containing about 38 to 40 grams. Defendant let Mr. Ford know that Defendant's girlfriend would be delivering pills to Mr. Ford's house. Defendant arrived at Mr. Ford's house after his girlfriend and removed baby powder bottles from her bag. Defendant gave Mr. Ford 100 pills and kept "[a]t least a couple hundred more" pills for himself. Pills were delivered to Mr. Ford's house this way on two other occasions.

Defendant had scheduled court dates for driving without a license and for criminal impersonation on July 10, 2013, and August 21, 3013. Defendant's bail bond was forfeited which indicated that he did not appear for either court date.

Investigator Jinks learned the phone numbers involved and issued a subpoena to the cell phone company and received the phone records from the company.[5] The phone numbers involved were XXX-XXX-2960, XXX-XXX-4396, XXX-XXX-9692, XXX-XXX-7405, and XXX-XXX-5584. The records showed that phone number XXX-XXX-2960 being used regularly in Detroit and Knoxville. The phone associated with XXX-XXX-9692 was found broken during the arrest of Defendant on July 31, 2013. The phone associated with XXX-XXX-7405 belonged to Mr. Strickland and was found during a search of his home on July 31, 2013. Lastly, the phone associated with XXX-XXX-5584 was registered in the name of "Eddie Bang a Hoe." "Eddie Bang a Hoe" was the alias connected with Mr. Green.

Defendant did not testify or present any evidence.

---

[5] The phone records were entered into evidence with the agreement of defense counsel.

After hearing the evidence, the jury found Defendant guilty on Counts 1-4, 7-8, 18-19, and 20-21, and acquitted Defendant on Counts 15-17, 23, and 25-26. Defendant received an effective sentence of twenty-three years.

*Motion for New Trial*

Defendant timely filed a motion for new trial. In the motion for new trial, Defendant argued that he received ineffective assistance of counsel, that the trial court erred by failing to investigate Defendant's dissatisfaction with his attorney-client relationship, that the trial court erred by allowing hearsay testimony, that the State engaged in prosecutorial misconduct, that a search warrant was invalid, that the trial court failed to include lesser-included offenses in the jury instructions, that the State did not provide witness statements prior to trial, that there was a variance between the presentment and the proof at trial, that there was newly discovered evidence, that Defendant's right to a speedy trial was violated, that the trial court erred by failing to rule on several pre-trial motions, that the State introduced multiplicitous counts, that the State improperly introduced evidence of prior bad acts, that the trial court denied Defendant his right to effective counsel, that the State's witnesses made perjured statements, that Defendant was convicted on guilt transference, that the evidence was insufficient to convict Defendant, that the trial court made errors in the jury instructions, that the State retaliated against Defendant by asking for a harsher sentence because Defendant exercised his right to appeal, that the State improperly vouched for witnesses, that Defendant's right to confront witnesses was violated, that Defendant was prejudiced in closing arguments, and that the trial court failed to act as the thirteenth juror.

*Hearing on the Motion for New Trial*

Retained counsel testified that he represented Defendant. He identified several motions that he initially filed on behalf of Defendant, including: (1) a motion for severance of unrelated counts; (2) a motion for discovery; (3) a motion for bond reduction; (4) a motion in limine to exclude evidence about Defendant's involvement in prostitution; (5) a motion to suppress evidence obtained during Defendant's arrest; (6) a motion to suppress GPS evidence; (7) a motion to suppress Defendant's statement; (8) a motion to strike alias; (9) a motion for the State to give notice of any incentives offered to witnesses; (10) a motion for disclosure of exculpatory evidence; (11) a motion for severance of co-defendants; (12) a *Bruton* motion; (13) a motion for speedy trial; (14) a motion to suppress evidence seized from a cell phone; (15) a motion to suppress pen register, trap, and trace information; and (16) a motion for a continuance due to additional discovery. The motion for speedy trial was dated March 12, 2015. The motion for continuance was filed on July 23, 2015. Retained counsel withdrew from the case prior to trial based on Defendant's refusal to cooperate. He testified that he turned all

discovery materials and other documentation over to appointed trial counsel. Retained counsel testified that he had a legitimate basis for each of the motions filed. Retained counsel testified that he sent a letter to the State asking for copies of documentation concerning the search at 173 Chicamauga Avenue. He acknowledged that he received the documentation and had notice of what evidence was collected during the search. Retained counsel recalled that he sent a letter to the State on April 25, 2014 in which he requested discovery. Retained counsel also notified Defendant of the request. He also recalled that he sent a letter to the State in which he explained that he could not open the video files that were received in discovery. He acknowledged that the State explained how to open the files. Retained counsel did not recall receiving information regarding the confidential informant. He identified a debriefing of Ms. Maples, dated April 8, 2015; a debriefing of Mr. Strickland, dated June 12, 2015; a debriefing of Ms. Bryant, dated June 18, 2015; and a debriefing of Ms. Huffaker, dated July 10, 2015. Retained counsel saw these documents when he represented Defendant. He went over everything he received in discovery with Defendant. Retained counsel also recalled that Defendant was "extremely uncooperative." He testified that Defendant missed appointments and did not appear for court dates. Retained counsel could not recall, specifically, which recordings he received in discovery. He did not recall which motions were heard, or which witnesses he would have called at trial. Retained counsel testified that he was not "at the point to develop our trial strategy, because the motions had not been heard" and he was "having difficulty getting [Defendant] to be serious about looking at this case." Retained counsel testified specifically about the motion to suppress GPS evidence. He stated:

> [T]he GPS motion, where they were tracking him through Ohio, when [Defendant] was coming from Detroit to Knoxville, if that motion had been granted then, obviously, [the State] wouldn't have been able to use that GPS information, but [the State] could still use the proof that [the State] had developed in Knoxville that [Defendant] was involved in a heroin conspiracy here. So it would have affected the trial some. Would it have affected the trial ultimately? No. Because there was other evidence than that.

Retained counsel agreed that, generally speaking, successful or unsuccessful motions impacted his trial strategy one way or another. He did not recall the criminal history of Ms. Bryant.

On cross-examination, retained counsel explained that he told Defendant that it was very important to attend meetings to review discovery. He agreed that in complex cases, discovery can take a long period of time. He acknowledged that the difficulty was not the amount or lack of discovery, but Defendant's refusal to cooperate. Retained

counsel testified that many of the motions filed were filed early on in the case, and that as his investigation continued, some of the motions would need to be amended or withdrawn. He acknowledged that some motions to suppress were either not filed at all or would not have been granted because Defendant lacked standing to raise the issues. Retained counsel recalled that there was a pen register, track and trace on Defendant's phone and that it was put on Defendant's phone by authorities in either Ohio or Michigan. Retained counsel recalled that Defendant was identified by others as "D." Retained counsel filed the motion to strike alias because he was worried about any alias. Retained counsel testified that none of the motions he filed were dispositive.

Mr. Holloway testified that he was a co-defendant in the conspiracy with Defendant. Mr. Holloway was arrested in Ohio on January 3, 2013, and was released sometime in March 2013. He was re-incarcerated in May 2013. Mr. Holloway was interviewed by the State in August 2016, prior to Defendant's trial. Mr. Holloway, the State's attorney, and Investigator Jinks were present for the interview. Mr. Holloway testified that the interview focused primarily on his Ohio arrest. He said that it was just him, Mr. Allen, and Ms. Ferris that were in the vehicle in Ohio when it was pulled over and drugs were found. Mr. Holloway said that he was "pretty sure [counsel for the State] was taking notes [during the interview]," but that he did not know if the interview was recorded. Mr. Holloway claimed no one contacted him on Defendant's behalf. He stated that if he had been asked to testify at Defendant's trial, he would have said that Defendant had nothing to do with the Ohio arrests, as Defendant was not present at the time. Mr. Allen was his drug contact. Mr. Holloway stated that he did not know from whom Mr. Allen got drugs. On cross examination, Mr. Holloway admitted that he was from Detroit and that Defendant was his cousin. He stated that he could only speak to the "the Ohio situation because [he's] going off of the date that [the State] said the conspiracy started [,] January 3, [2013]." Mr. Holloway admitted that he pled guilty to the conspiracy and that he agreed with the factual basis for the plea. He claimed that he did not know if Defendant had any involvement with Ms. Maples, Ms. Huffaker, or Mr. Ford.

Mr. Allen, a co-defendant, testified that no one contacted him on Defendant's behalf and that he was not subpoenaed to testify at the trial. He did not know the owner of the phone number XXX-XXX-4396 and that no phones were seized from him. Mr. Allen stated that he did not know what happened to his phone as he did not have it with him when he was arrested. Mr. Allen claimed that he had nothing to do with Defendant and that he received no drugs from Defendant. On cross examination, Mr. Allen admitted that he had several felony convictions in Ohio and Michigan. He stated that Defendant and most of the co-defendants grew up together in the same neighborhood in Detroit. Mr. Allen said that Mr. Holloway was known as "Midnight" and that Mr. Strickland was known as "Man." He admitted that he was involved in the conspiracy to

sell heroin. Mr. Allen stated that he "never knew that [he] [pled] out to conspiracy. [He] thought [he] was pleading out to selling drugs." Mr. Allen did not know that he was convicted of conspiracy until he received his "TOMIS" sheet in prison. Mr. Allen claimed that he did not recall that the word conspiracy was used numerous times during his guilty plea. He admitted that he lived at 1313 New York Avenue and that Defendant came by to "just smoke weed." Mr. Allen knew that Ms. Maples rented the house at 1313 New York Avenue. Mr. Allen admitted to selling heroin at the house, and that he brought it from Adair Manor Apartments. He said that he got the heroin from someone with the street name of "D." Mr. Allen could not recall his own cell phone number. He admitted he lied to police about his real name. Mr. Allen knew "three or four D's," although he could not name them when questioned and called them "homeboys." Mr. Allen stated that Defendant's nickname was "Nard." He could not recall if he had Defendant's phone number stored in his phone under "D," but claimed that it was probably stored under "Ricco." Mr. Allen stated that other people used his phone and that they could have put the phone number in the phone under the name of "D." Mr. Allen admitted that he sold heroin at the Adair Manor Apartments. He also recalled that Defendant was at the Adair Manor Apartments. Mr. Allen claimed that he gave Ms. Maples the money to put the 1313 New York Avenue house in her name. He admitted that the heroin he sold was "bluish-grey" in color, an unusual color for heroin. When he was arrested in June 2013, Mr. Allen said that Mr. Green was in the vehicle with him. Mr. Allen admitted to "smoking dope" with Mr. Ford's daughter at 173 Chickamauga Avenue.

Defendant testified that he received trial counsel's phone number from retained counsel. Defendant stated that he was "steady calling [trial counsel] asking him to set a motion court date. So [Defendant's] motions can be heard. No answer. No contact. Not nothing from [trial counsel]." Defendant claimed that he called at least two or three times a month and left messages with trial counsel's office. Defendant said that his phone number remained the same from the day trial counsel was appointed to the present day. Defendant testified that he had not seen the phone records for XXX-XXX-2960, XXX-XXX-9692, or XXX-XXX-7405. He stated that he never saw the recordings or pictures of the controlled buys between Mr. Allen and Ms. Bryant. Defendant did not receive pictures of money seized from Mr. Allen during Mr. Allen's arrest on June 21, 2013. Defendant admitted that retained counsel showed him photographs of the baby powder bottle found in the trunk of his vehicle during Defendant's June 28, 2013 arrest. Defendant saw photographs of drug paraphernalia and drugs from Ms. Maples's purse that were taken during the June 28, 2103 arrest. Defendant recalled that retained counsel showed him the rental application that Ms. Bryant completed. Defendant testified that any discovery provided to him was supplied by retained counsel and that trial counsel never showed him anything. He stated that he never saw anything regarding Ms. Bryant's criminal history. Defendant testified that he asked for, but never received, a

recording of his interview with Investigator Jinks. Defendant insisted the interview contained exculpatory evidence. Defendant received a copy of the search warrant, affidavit for the warrant, and all evidence seized from Mr. Ford's house from a private investigator in August 2017. Defendant stated he received all information about the search of Mr. Adcock's residence before the trial. Defendant stated that he did not see any of the debriefings of co-defendants or Ms. Bryant until appellate counsel gave them to him in August 2017.

Defendant stated that trial counsel met with him one time for about 45 minutes between August 8, 2016 and August 10, 2016 but did not go over any discovery materials or trial strategy with him. Trial counsel presented a plea offer of fifteen years at 100 percent to Defendant. Defendant testified that when was transferred to the jail for trial he was in "classification" and could take no visitors, so it was impossible that trial counsel to meet with him on August 8, 2016.

Defendant stated that the majority of continuances were due to the State and that his demand for speedy trial was filed on March 12, 2015. Defendant recalled that retained counsel withdrew as counsel on August 31, 2015, the same day he filed a continuance because the State added additional discovery. The case was reset for trial on February 22, 2016. Defendant did not agree to reset the February 22, 2016 date to August 8, 2016, "because [he] never got in contact with [trial counsel]." He had no contact with trial counsel before August 8, 2016. Defendant stated that he and trial counsel "never sat down and built a defense or had his pretrial motions heard so [Defendant] could know what evidence can be introduced in trial . . . . [Defendant] could not build a defense with a lawyer that [Defendant] never met before."

Defendant told the trial court that he wanted to go to trial even though he had not met trial counsel. Defendant stated that he had gone over all of the discovery that he had been given, but that he did not know there was other evidence and discovery that he had not seen. Defendant testified that if he had seen all the evidence that he could have made a better decision about moving forward with the trial or pleading guilty. Defendant said that he did not learn the identity of the confidential informant until the trial. He stated that during the trial he told trial counsel to call Mr. Holloway, Mr. Green, Mr. McFadden, Mr. Strickland, Mr. Allen, and Mr. Pate as witnesses on his behalf. Defendant recalled he told trial counsel to "move for a dismissal or [make] an argument due to a speedy trial" on August 8, 2016 and that trial counsel did not want to.

Defendant denied knowing or ever meeting Mr. Ford and knew of no reason why Mr. Ford would identify him as his narcotics supplier. He claimed that after reviewing the search warrant affidavit for Mr. Ford's house, he "noticed false and misleading information." In paragraph 11, the affidavit read;

On July 31[], 2013, Officer Jinks began receiving information from the Michigan State Police Metro Narcotics Task Force that the GPS surveillance on cellular phone with telephone number [XXX-XXX-9692] assigned to it was traveling on I-75 towards Knoxville. This is the cellular telephone last known to have been [in the] possession of [Defendant]. At approximately noon[,] the phone was located at the residence at 1123 Adcock Avenue through GPS surveillance. The GPS surveillance data verified that the cellular telephone [XXX-XXX-9692] known to be used by [Defendant] travelled to the 173 Chickamauga Avenue residence. Physical surveillance was picked up at 173 Chickamauga Avenue. Your affiant was told by Officer Jinks that he watched as a black male matching the description of [Defendant] exited the residence and got into the rental vehicle and drove back to 1123 A[d]cock. After that CS1 placed a consensually recorded telephone call to [XXX-XXX-9692] and made contact with [Defendant] who verified that he was in town and that he had blueberry for [sale] for $30.00 each. Your affiant knows that blueberry is common street slang for 30 milligrams oxycodone tablets.

Defendant stated that this was the subject of the motion to suppress GPS evidence. Defendant claimed that XXX-XXX-9692 was not his phone. Defendant stated that his phone number had a 517 area code, but could not remember the rest of the number. Defendant recalled he was not made aware of the recorded phone calls and phone records until trial. He stated that had he known all of this evidence was being presented at trial he would never have told the trial court that he had gone through discovery a thousand times.

On cross-examination, Defendant claimed that retained counsel lied on the stand when he said that he could not contact Defendant and that Defendant failed to meet with him to talk about discovery. Defendant admitted that he missed one court date. Defendant opined that retained counsel did not give him video recordings. He claimed that retained counsel lied about having the debriefings.

Defendant claimed that he did not know Ms. Bryant at all and was never provided debriefings from trial counsel. Defendant denied that it was his voice on recordings from phone number XXX-XXX-9692 that were played during the hearing. Defendant reiterated that XXX-XXX-9692 was not his phone. Defendant admitted that because it was not his phone, he had no standing to complain about the GPS tracking and that any motion to suppress was moot. Defendant said that Investigator Jinks lied about finding the phone assigned to XXX-XXX-9692 in the vehicle on the day he was arrested. He stated that the affidavit incorrectly stated that he traveled down I-75. He stated he was

- 15 -

already in town and staying at Mr. Strickland's residence on Adcock.  He denied that he had regular contact with Mr. Allen using the XXX-XXX-9692 number.

Defendant denied that trial counsel came to see him in jail on August 8, 2016, at 2:54 p.m., even though the jail records showed otherwise.  He testified the only day he met with trial counsel was on August 9, 2016, for forty five minutes.  Defendant testified that each co-defendant lied during the trial because they received a deal from the State.

Trial counsel was called as a witness at the Motion for New Trial hearing.  He recalled the pre-trial motions filed by retained counsel, before him.  Trial counsel read the following from the trial transcript:

> The Court:  We have no motions pending.
> [Defendant]:  I got a motion.
> The Court:  This is your lawyer.  He has – [trial counsel], he's saying [retained counsel] has filed 12 motions.
> [The State]:  I've addressed those in this court in front of your Honor.
> The Court:  Okay
> [The State]:  You've already ruled on them.
> The Court:  Okay.  No.  We've heard the motions.  All of them.
> [Defendant]:  Not mine, your Honor.

Trial counsel stated that he reviewed the entire file he received from retained counsel and the State.  The trial court asked if everyone could agree that the motions were not heard pre-trial.  The State responded that some had been heard and others had not.  The State agreed that the suppression motions had not been heard.  Trial counsel stated that it was his understanding that all pre-trial motions had been heard and ruled on.  Trial counsel did not recall if he had seen the chart regarding contact between co-defendants.  Trial counsel acknowledged that he received three messages from Defendant dated December 7, February 2, and October 5.  None of the messages stated the year, but Trial counsel conceded that the messages would have corresponded with the time frame that he represented Defendant.  Trial counsel stated that he would not have contacted or called any of Defendant's co-defendants as witnesses, as he understood that the co-defendants were cooperating with the State.  Trial counsel did not recall if Defendant spoke to him about favorable witnesses.  Trial counsel recalled several phone calls he made to Defendant, but he did not remember actually speaking to Defendant.  He remembered speaking with a female when he called Defendant.  Trial counsel stated that Defendant never came to meet with him.  Trial counsel did not send Defendant any further discovery.  Trial counsel did not recall a meeting between Mr. Holloway and the State or viewing the criminal record of Ms. Bryant.  Trial counsel stated that he and Defendant did not go over the entirety of discovery during their meetings.  They

discussed which witnesses were going to be called, as trial counsel had been informed "a number of co[-]defendants that were going to testify." Trial counsel stated that he did not watch the videos and that he did not recall going over the phone records. Trial counsel recalled that he had been through the discovery, but had not met with Defendant, so he was asking for a couple of weeks' continuance. Trial counsel stated that he would rather have had a couple of weeks instead of two days, but that he did the best he could with what he had. Trial counsel testified he understood that Defendant had copies of everything and that Defendant had either reviewed it himself or with retained counsel. Trial counsel stated that Defendant wanted to go to trial and that Defendant told him that he had been over the discovery a "ton of times." Trial counsel did not have any specific recollection of reviewing discovery, but stated "[a]nything [he] got, [he] reviewed." Trial counsel did not recall any surprises at trial. Trial counsel did not file a motion to dismiss on a violation of the right to a speedy trial. Trial counsel did not recall Defendant asking him to file a motion for speedy trial. Trial counsel did not recall if he objected to evidence concerning Defendant's failure to appear charges. He admitted that he did not object to the admissibility of evidence collected from the vehicle on June 28, 2013.

On cross examination, trial counsel testified that Defendant lived in Michigan during the time he represented Defendant. Trial counsel was an appointed attorney, and it was not practical for him to travel to Michigan to meet with Defendant. Trial counsel responded to each of Defendant's messages and made efforts to reach out to Defendant, but Defendant never came to meet with him. Trial counsel agreed that because Defendant did not come see him, his ability to prepare for trial was hampered. Trial counsel wanted a continuance to properly prepare with Defendant, but Defendant was adamant about proceeding to trial. Trial counsel felt that Defendant could not ask for both a continuance and a speedy trial. He agreed that pursuit of a speedy trial motion, when Defendant would not meet with him to prepare for trial, would be problematic. Trial counsel stated that Defendant's missed court appearances caused problems. He did not recall why the trial date was continued on February 22, 2016.

At the conclusion of the hearing, appellate counsel conceded that several motions, including the motion to sever co-defendants, the motion for discovery, the motion in limine regarding prostitution, the motion to suppress Defendant's statement, the motion for *Brady*[6] material, and the motion for severance regarding co-defendants' statements were moot. Appellate counsel conceded that the motion for bond reduction was heard and ruled on. Appellate counsel did not agree that the motions for striking alias, for the State to give notice of incentives, for the demand for a speedy trial, to suppress evidence from the cell phones, and to sever charges were moot.

---

[6] *See Brady v. Maryland*, 373 U.S. 83 (1963).

During the hearing on the motion for new trial, the trial court commented that he believed Defendant perjured himself during his testimony. The trial court further noted that the voice heard on the recorded phone calls sounded "remarkably like that of [Defendant]."

The trial court found that

[a]ssuming arguendo, that trial counsel was ineffective for failing to litigate these motions (which this [c]ourt does not hold) there is no evidence within this record supporting the second prong of the *Strickland[v. Washington*, 466 U.S. 668, 687 (1984)] test. This [c]ourt may not presume, nor may it infer, that a different outcome may have resulted had the motions been litigated. Moreover, this defendant does not have standing to challenge any search of co-conspirator Tim Ford's residence.

As to trial counsel's lack of preparation for the trial, the trial court found that Defendant "may not now complain that the narrative he directed does not have the happy ending he desired." The trial court found that Defendant insisted that he had reviewed all discovery and Defendant stated that "I'm ready to go [to trial] today, Your Honor." The trial court accredited the testimony of retained counsel and trial counsel that Defendant would not cooperate in preparation for trial.

The trial court found that "the evidence of [Defendant's] participation within the alleged conspiracy was overwhelming." The trial court found that the witnesses implicated Defendant's participation and that their testimony was corroborated by the evidence. The trial court stated:

[D]efendant's self-serving attempt to repudiate this evidence is not credible. Nor does this [c]ourt find as credible the testimony of [Mr.] Allen and [Mr.] Holloway wherein each asserts that [Defendant] had no role in the conspiracy for which he was convicted.

This [c]ourt has spent considerable time reading the technical record in this case, reading the trial transcript, and carefully reviewing all of the grounds [Defendant] has raised in support of his assertion that he is entitled to a new trial.

The trial court denied the motion for new trial. It is from that denial that Defendant now appeals.

*Analysis*

*I. Ineffective Assistance of Counsel*

Defendant argues that the trial court erred by finding that Defendant received the effective assistance of counsel. Specifically, Defendant argues that trial counsel failed to litigate numerous pre-trial motions, that trial counsel failed to adequately prepare for trial by meeting with Defendant, that trial counsel failed to object when necessary, that trial counsel failed to move to dismiss on grounds of violating Defendant's right to a speedy trial, that trial counsel failed to request lesser-included offenses in the jury instructions, and that trial counsel failed to move to exclude all evidence that was illegally obtained. The State argues that Defendant failed to show that trial counsel was ineffective. We agree with the State.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. at 687, a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

We note, however, that the practice of raising ineffective assistance of counsel claims on direct appeal is "fraught with peril" since it "is virtually impossible to demonstrate prejudice as required" without an evidentiary hearing. *Blackmon v. State*, 78 S.W.3d 322, 328 (Tenn. Crim. App. Nov. 16, 2001); *see also Kirby George Wallace v. State*, No. 01C01-9308-CC-00275, 1994 WL 504401, at *3 (Tenn. Crim. App., Sept. 15, 1994), *no perm app. filed*. Ineffective assistance can rarely be established without an evidentiary hearing, and raising the issue on direct appeal may result in losing the appeal and also barring a petitioner from raising the issue in the post-conviction arena. *State v.*

*Leroy Sexton*, No. M2004-03076-CCA-R3-CD, 2007 WL 92352, at *3 (Tenn. Crim. App. Jan.12, 2007), *perm. app. denied* (Tenn. May 14, 2007). Instead, "ineffective assistance of counsel claims should normally be raised by petition for post-conviction relief." *State v. Derenzy Turner and Vernon West*, No. 02C01-9512-CR-00390, 1997 WL 312530, at *11 (Tenn. Crim. App., July 11, 1997), *perm. app. denied* (Tenn. Feb. 23, 1998). However, with the assistance of counsel, Defendant has thoroughly presented his claims at an evidentiary hearing. We will not disturb the path he has voluntarily chosen and will give complete review to his numerous claims of ineffective assistance of counsel.

Tennessee Code Annotated section 40-30-110(f), requires a defendant seeking post-conviction relief on the basis of ineffective assistance of counsel to prove his or her allegations "by clear and convincing evidence." This same standard should apply even when the claim of ineffective assistance of counsel is raised on direct appeal. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Burns*, 6 S.W.3d at 462. This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given

to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

### A. Confer with Defendant

Defendant argues that trial counsel should have reviewed discovery and discussed potential trial strategies and defenses with him prior to trial. Additionally, Defendant argues that trial counsel should have discussed the issues of preserving Defendant's rights, suppression of evidence, and interviews of witnesses. The State argues that the failure to raise these issues in preparation for trial falls squarely at the feet of Defendant.

The trial court found that trial counsel repeatedly tried to contact Defendant in Michigan prior to trial. Much of the time trial counsel's efforts were thwarted by different people answering the phone instead of Defendant. Defendant never made an effort to confer or meet with trial counsel. The record shows that Defendant rebuffed retained counsel the same way. Trial counsel asked for a continuance because Defendant was in Knoxville for trial so he would have a chance to review the information with Defendant. Defendant told the trial court that he had reviewed the discovery "a thousand times sitting at home," and he insisted on going to trial that day. The trial court found that "[Defendant] may not now complain that the narrative he directed does not have the happy ending he desire." The trial court accredited the testimony of trial counsel that Defendant was not cooperative. The record does not preponderate against the factual findings of the trial court. Defendant is not entitled to relief on this issue.

### B. Pre-Trial Motions

Defendant argues that trial counsel was ineffective for failing to argue the pre-trial motions filed by retained counsel. Defendant also argues that the State has waived any argument about Defendant's standing to challenge the search and/or evidence because the State did not raise the issue at trial. The State argues that many of the pre-trial motions were moot. The State argues that Defendant did not have standing to challenge any phone number other than XXX-XXX-2960, as Defendant has denied that any of the other phone numbers belonged to him. The State argues that Defendant did not have standing to challenge the search or evidence found at Mr. Strickland's house or Mr. Ford's house. The State also argues that Defendant failed to carry his burden of proof to show prejudice or that any of the motions would have been meritorious. We agree with the State.

When a defendant asserts that counsel rendered ineffective assistance of counsel by failing to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the hearing; otherwise, the defendant asks the Court to grant relief based upon mere speculation. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The same standard applies when a defendant argues that trial counsel was constitutionally ineffective by failing to file pre-trial motions to suppress evidence. *Terrance Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App., Sept. 12, 2011), *no perm. app. filed.* In order to show prejudice, the defendant must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. *Id*.

### 1. Motion for Severance of Unrelated Charges

Defendant argues that trial counsel was ineffective for failing to litigate the motion to sever unrelated charges for failure to appear because they were unconnected to this case. He claims that he was prejudiced in the eyes of the jury by the admission of this evidence. The State argues that Defendant has not shown that he was prejudiced by the failure to sever the charges for failing to appear.

The record shows the jury acquitted Defendant on each count charging Defendant with failure to appear. Therefore, Defendant has failed to show prejudice resulting from trial counsel's failure to litigate the motion to sever. Therefore, he is not entitled to relief.

### 2. Motion to Suppress Evidence

Defendant argues that trial counsel was ineffective for failing to litigate the motion to suppress the evidence seized during Defendant's arrest. The State argues that Defendant has not shown prejudice.

Tennessee courts require motions to suppress evidence to be factually specific. "[T]he supporting claim for an evidentiary hearing on a motion to suppress must be sufficiently definite, specific, detailed and nonconjectural, to enable the [c]ourt to conclude a substantial claim was presented." *Davidson*, 606 S.W.3d at 297. (quoting *Cohen v. United States*, 378 F.2d. 751 (9th Cir. 1967)). Specificity is required so that the court may be informed of whether Defendant has the right to a hearing. "[I]n order to receive a hearing upon such a motion, the motion must be sufficiently definite to enable the trial court to determine whether a substantial claim has been presented." *State v. Bell*, 832 S.W.2d 583, 588 (Tenn. Crim. App. 1991). Bare allegations of law without any factual allegations are insufficient. *See State v. Jefferson*, 938 S.W.2d 1, 9 (Tenn. Crim. App. 1996); *State v. Howell*, 672 S.W.2d 442, 444 (Tenn. Crim. App. 1984). Adherence

to the specificity requirement ensures judicial economy and fairness to all parties. "The reason for [the specificity requirement] is to prohibit the expenditure of court time in general exploratory probes to discover if there might be some possibility of a substantial claim." *Davidson*, 606 S.W.3d at 297

Defendant argues that his June 28 and July 31 arrests were unlawful, thus any items seized during the arrests and any evidence discovered because of the arrests should have been suppressed. However, the motion speaks to one singular arrest. We do not know to which arrest the motion refers. Retained counsel testified that many of the motions he filed would need to be amended before they were heard. Further, the trial court gave permission to trial counsel to object to any evidence admitted during the trial. Defendant has failed to show that, as written, the motion to suppress would have been granted. Therefore, Defendant has not shown prejudice and is not entitled to relief.

### 3. GPS Evidence and Pen Register, Trap, and Trace Information

Defendant argues that trial counsel was ineffective for failing to litigate the motion to suppress GPS evidence. The State argues that Defendant has not been prejudiced.

The motion in question sought to "suppress this evidence [of] any information obtained without a search warrant including, but not limited to GPS information." The record shows that 15 to 20 cell phones were recovered during the investigation. No phone number is specified in the motion. Motions to suppress evidence must be factually specific. *See Davidson*, 606 S.W.3d at 297. Defendant has failed to show that, as written, the motion to suppress would have been granted. Therefore, Defendant has not shown prejudice.

### C. Exculpatory Statements and Favorable Witnesses

Defendant argues that trial counsel was ineffective for failing to discover an exculpatory statement made by a co-defendant and for failing to call Mr. Holloway, Mr. Green, and Mr. Allen as favorable witnesses during the trial. The State argues that Defendant is not entitled to relief.

Defendant argues that Mr. Holloway was interviewed by the State a week before trial and that Mr. Holloway believed the prosecutor was taking notes during the meeting. Mr. Holloway and Mr. Allen testified at the hearing on the motion for new trial that Defendant was not present during the Ohio arrest. This same information was testified to during the trial by Officer Archer. Mr. Holloway and Mr. Allen also testified that Defendant had nothing to do with the drug conspiracy.

- 23 -

Although Mr. Holloway and Mr. Allen both provided exculpatory evidence during the motion for new trial hearing, the trial court stated in its ruling; "[n]or does this [c]ourt find as credible the testimony of [Mr.] Allen and [Mr.] Holloway wherein each asserts that [Defendant] had no role in the conspiracy for which he was convicted." Mr. Green did not testify at the hearing. Trial counsel stated that he spoke with the attorney's for Mr. Holloway, Mr. Allen, and Mr. Green and understood that each of them would be cooperating with the State; therefore, he would not call them as favorable witnesses. The trial court accredited the testimony of trial counsel. We will not second-guess the trial court's credibility determination. *See Honeycutt*, 54 S.W.3d at 766-67. Defendant has not shown prejudice and is not entitled to relief.

### D. Confidential Informant

Defendant argues that trial counsel was ineffective by failing to discover and disclose the identity of the confidential informant along with her criminal record. The State argues that Defendant was not prejudiced.

Defendant argues that trial counsel did not sufficiently go over discovery with him therefore, Defendant did not know the identity of the confidential informant. The record shows that Ms. Bryant's identity was disclosed to Defendant well in advance of the trial. As stated above, Defendant was not cooperative with trial counsel and had stated that he had gone over discovery a "thousand times." The trial court accredited the testimony of trial counsel. We will not second-guess the trial court's credibility determination. *Id.* Defendant is not entitled to relief.

### E. Jury Instructions

### 1. Lesser-Included Offenses

Defendant argues that trial counsel was ineffective for failing to object to, or request, lesser-included offenses in the jury instructions. Defendant also argues that trial counsel was ineffective for failing to request other jury instructions. The State argues that trial counsel was not ineffective for failing to request instructions that were not fairly raised by the proof. The State further argues that Defendant did not ask trial counsel about the jury instructions at the motion for a new trial hearing.

Nothing in the record from the motion for new trial hearing indicates that Defendant asked trial counsel about why trial counsel did not object. Defendant did not mention jury instructions at any time during the hearing. Defendant has failed to prove by clear and convincing evidence that trial counsel's failure to request or object to jury

instructions equates to ineffective assistance of counsel. Defendant is not entitled to relief.

## 2. Incorrect Instructions

Defendant argues that the trial counsel was ineffective for failing to object to erroneous jury instructions for Counts 3 and 4. The State concedes that the incorrect instructions were given.

Defendants are constitutionally entitled to a correct and complete charge of the law applicable to their case. *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011). "As part of their instructions in criminal cases, trial courts must describe and define each element of the offense or offenses charged." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn.2005). Failure to object to erroneous jury instructions can constitute ineffective assistance of counsel. *See Vaughn v. State*, 202 S.W.3d 106 (Tenn. 2006).

Here, Counts 3 and 4 of the presentment charged, and the jury convicted, Defendant with conspiracy to sell and conspiracy to deliver heroin in a drug-free zone. However, the jury was instructed on different offenses; conspiracy to possess with the intent to sell and conspiracy to possess with intent to deliver heroin in a drug free zone. The jury instructions did not set out a correct and complete charge of the applicable law. Trial counsel should have objected to the erroneous instructions. Therefore, Defendant was prejudiced because the jury convicted Defendant for offenses that were not charged in the jury instructions.[7] As a result of trial counsel's failure to object to the improper instructions, Defendant was prejudiced. Because trial counsel provided deficient service, and Defendant was prejudiced, Defendant's convictions for Counts 3 and 4 are vacated.

## F. Prior Bad Acts

Defendant argues the trial counsel was ineffective for failing to object to the introduction of Defendant's prior bad acts in violation of Tennessee Rule of Evidence 404(b). The States argues that trial counsel was not ineffective.

Nothing in the record from the motion for new trial hearing indicates that Defendant asked trial counsel about the reasons why he did or did not object to the admission of any prior bad acts. The prior bad acts that Defendant notes specifically are: (1) Investigator Jinks's statement about Defendant's prior drug conviction; (2) Testimony about Mr. McFadden's backpack being found in Defendant's vehicle; (3) testimony about Defendant's outstanding warrant for failing to appear; and (4) testimony regarding

---

[7] The jury instructions for the remaining conspiracy counts were correct.

Defendant's charges for driving without a license and criminal impersonation. "There is no obligation on a lawyer to object at every opportunity." *State v. Donald Craig and William Meadows, Jr.*, No. 85-10-III, 1985 WL 3866, at *3 (Tenn. Crim. App. Nov. 27, 1985), *perm. app. denied* (Tenn. Mar. 3, 1986). Because Defendant failed to put forth any proof with regard to this issue at the hearing, he failed to prove by clear and convincing evidence trial counsel was ineffective. Defendant is not entitled to relief.

### *G. Perjured Statements*

Defendant argues that trial counsel was ineffective by failing to object to perjured statements by Ms. Bryant during her testimony at trial. The State argues that trial counsel was not ineffective for failing to argue that Ms. Bryant perjured herself.

> It is a well established principle of law that the [S]tate's knowing use of false testimony to convict an accused is violative of the right to a fair and impartial trial as embodied in the Due Process Clause of the Fourteenth Amendment to the Constitution and Article I, §§ 8 and 9 of the Tennessee Constitution.

> When a [S]tate witness answers questions on either direct or cross examination falsely, the district attorney general, or his assistant, has an affirmative duty to correct the false testimony. Whether the district attorney general did or did not solicit the false testimony is irrelevant. However, if the prosecution fails to correct the false testimony of the witness, the accused is denied due process of law as guaranteed the United States and Tennessee Constitutions…. This rule applies when the false testimony is given in response to questions propounded by defense counsel for the purpose of impeaching the witness.

*State v. Spurlock*, 874 S.W.2d 602, 617-618, (Tenn. Crim. App. Mar. 6, 2000).

Defendant asserts that Ms. Bryant perjured herself when asked if she were getting some charges taken care of in exchange for her work as an informant, or if she was being paid to be an informant. Ms. Bryant emphatically replied "No. No. No." Ms. Bryant stated that she was being paid in cash for her part in the investigation. The record shows that Ms. Bryant was charged with possession of a Schedule II controlled substance, possession of drug paraphernalia, and theft. The State entered a nolle prosequi to the charges during Ms. Bryant's participation in Defendant's case. However, the record is silent as to whether the charges were nolled in exchange for her participation as a confidential informant. Investigator Jinks's testimony confirmed that Ms. Bryant was

paid in cash each time she acted as a confidential informant. Defendant has not established, by clear and convincing evidence, that Ms. Bryant committed perjury. *See Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Therefore, trial counsel was not ineffective for failing to object.

### *H. Speedy Trial*

Defendant argues that trial counsel was ineffective by failing to file a motion to dismiss for violation of Defendant's right to a speedy trial. The State argues that Defendant has failed to show that trial counsel was ineffective.

At the hearing on the motion for new trial, trial counsel stated that he would not have made a motion to dismiss when the trial was scheduled to begin in a few days. Trial counsel further noted that some of the delay was caused by Defendant's failure to meet with his attorneys. The record shows that trial counsel considered the motion to dismiss and chose not to make the motion. We will not second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins*, 911 S.W.2d at 347; *Williams*, 599 S.W.2d at 279-80. Defendant failed to prove by clear and convincing evidence that trial counsel was ineffective.

### *I. Comment on Defendant Not Testifying*

Defendant argues that trial counsel was ineffective by commenting on Defendant's choice not to testify in the presence of the jury. The State argues that trial counsel was not ineffective.

Defendant failed to ask trial counsel during the hearing on the motion for new trial about his decision to announce that Defendant chose not to testify. Therefore, Defendant failed to show that he was prejudiced by trial counsel's statement. Defendant has not proven by clear and convincing evidence that trial counsel was ineffective. Defendant is not entitled to relief on this issue.

### *J. Suppression of Evidence*

Defendant argues that trial counsel was ineffective for failing to object to all evidence that should have been suppressed, all evidence that should have been severed, all hearsay evidence, and all evidence of Defendant's prior bad acts. The State argues that trial counsel was not ineffective.

The only exchange about objections at the motion for new trial hearing shows the following exchange between appellate counsel and trial counsel:

- 27 -

[Appellate counsel]: . . . did you ever object to any evidence coming in concerning the failure to appear counts? Evidence that came in to - - just to evidence coming in about these failure to appear counts during the trial?

[Trial counsel]: I don't recall.

. . .

[Appellate counsel]: . . . did you ever object to any of the evidence coming in based on the stops, the arrests of [Defendant], June 28th, 2013 [and/or] July 31st, 2013? Did you object to the admissibility of any of that evidence based on a bad stop?

[Trial counsel]: What evidence? Again, I don't recall what evidence came in based on the stop. The trash in the back of the vehicle?

[Appellate counsel]: Like that, the photograph of the trash in the back of the vehicle?

[Trial counsel]: I don't believe I did.

Trial counsel did not recall if he made any objection to one question and stated he did not object to the second question. Defendant did not ask trial counsel any questions as to why he did or did not make any objections. Defendant did present any proof as to the myriad other objections he alleges trial counsel should have made. There is no obligation to object at every opportunity. *Donald Craig*, 1985 WL 3866, at *3. Defendant has not proven by clear and convincing evidence that trial counsel was ineffective.

*K. Cumulative Errors*

Defendant argues that trial counsel's errors deprived Defendant of a fair trial. The State argues that Defendant is not entitled to cumulative error relief.

The cumulative error doctrine recognizes that "there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). However, for the cumulative error doctrine to

apply, there must have been more than one error committed in the trial proceedings. *Id*. at 77.

Because we have found only one error, Defendant failed to establish that he is entitled to post-conviction relief on the basis of cumulative error as a result of trial counsel's ineffectiveness. Defendant is not entitled to cumulative error relief.

## II. Prejudicial Offenses

Defendant argues that the trial court erred by failing to sever the prejudicial and unrelated failure to appear charges from the remaining charges at trial. The State argues that the failure to sever Defendant's failure to appear charges was harmless.

Rule 14(b)(1) of the Tennessee Rules of Criminal Procedure provides that a defendant has the right to severance of offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others. Tenn. R. Crim. P. Rule 14(b)(1). On appeal, "decisions to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) are to be reviewed for an abuse of discretion." *State v. Shirley*, 6 S.W.3d at 247. "[A] trial court's refusal to sever offenses will be reversed only when the 'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.' " Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn.1997)). However, failure to sever charges is neither a structural nor constitutional error which requires reversal unless the error is harmless beyond a reasonable doubt. *State v. Dotson*, 254 S.W.3d 378, 388 (Tenn. 2008). Therefore the inquiry must determine what harm, if any, Defendant suffered. *Id*. Judgments "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment." *Id*. Defendant must show that the "error probably affected the judgment before reversal is appropriate." *Id*. "[T]he more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less like it becomes that an error affirmatively affected the outcome on its merits." *Id*. "No conviction shall be reversed on appeal except for errors that affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). Tennessee law places the burden on the defendant who is seeking to invalidate his or her conviction to demonstrate that the error "more probably than not affected the judgment or would result in prejudice to the judicial process." *State v. Rodriguez* 254 S.W.3d 361, 372 (Tenn. 2008).

Defendant argues that he was prejudiced in the eyes of the jury by the introduction of unrelated criminal charges. The following are the charges of concern: Count 15, failure to appear for arraignment for offense of driving without a valid license; Count 25, failure to appear for arraignment for offense of driving without a valid license; and Count

26, failure to appear for arraignment for offense of criminal impersonation. Defendant asserts that he was prejudiced at trial by Investigator Jinks's testimony that he had an outstanding warrant for failure to appear, that Defendant had forfeited his bonds for failing to appear for court dates, and that Defendant was charged with criminal impersonation. The State argues that Defendant has waived any issue as to Count 15 because it was not included in the original motion to sever. The State asserts that although the trial court did not sever the failure to appear charges, the failure to sever did not affect the jury's verdict. Significant to this issue, the jury acquitted Defendant on all three of the failure to appear charges as well as several other counts. Additionally, as we determine below, the proof of Defendant's guilt on the remaining charges was overwhelming. We believe the trial court erred in not severing these unrelated offenses. However, we find that the trial court's failure to sever the charges was harmless beyond a reasonable doubt. Defendant is not entitled to relief.

## *III. Prosecutorial Misconduct*

Defendant argues that the trial court erred by not granting Defendant a new trial due to prosecutorial misconduct. Specifically, Defendant asserts the following as prosecutorial misconduct: (1) the failure to disclose Ms. Bryant's criminal charges; (2) the failure to disclose notes from Mr. Holloway's interview; (3) the State improperly vouching for Ms. Bryant and Investigator Jinks (4) the State erred when it stated that the pre-trial motions had been ruled on; and (5) the stipulation regarding the lab report failed to reflect that the drugs did not belong to Defendant. The State argues that Defendant is not entitled to relief.

When reviewing allegations of prosecutorial misconduct, the general test applied is whether the State's improper conduct could have affected the verdict to the prejudice of the defendant. *State v. Reid*, 164 S.W.3d 286, 344 (Tenn. 2005). The relevant factors are:

1. The conduct complained of viewed in light of the facts and circumstances of the case;

2. The curative measures undertaken by the court and the prosecution;

3. The intent of the prosecutor in making the improper arguments;

4. The cumulative effect of the improper conduct and any other errors in the record; and

5. The relative strength and weakness of the case.

*Id*. at 345 (internal citations omitted).

Defendant also claims that the State failed to disclose notes from a conversation with Mr. Holloway about his arrest in Ohio. Defendant argues that the State improperly vouched for Ms. Bryant and Investigator Jinks during the trial. Defendant finally argues that the State committed prosecutorial misconduct when it told the trial court that all of Defendant's pre-trial motions had been heard, when it failed to include a stipulation that laboratory reports did not reflect that any drugs belonged to Defendant, and when the State used an improper closing argument. The State argues that Defendant is not entitled to relief.

### A. Brady Violation

Defendant claims that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose that criminal charges against Ms. Bryant were dismissed during the investigation and when it failed to disclose notes from an interview of Mr. Holloway. The State argues that there was not a due process violation under *Brady*.

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Id*. at 87. Evidence favorable to the accused includes evidence that may be used to impeach a State's witness. *State v. Jackson*, 444 S.W.3d 554, 593 (Tenn. 2014) (citations omitted). To establish a Due Process violation based on *Brady*, Defendant must show that: 1) the information was requested, 2) The State suppressed evidence in its possession, 3) the evidence was favorable to Defendant, and 4) the evidence was material. *Id*. at 594. However, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

### 1. Ms. Bryant

Defendant was provided with Ms. Bryant's identity well before the trial. Arrest histories are available upon request. *See* T.C.A. §40-32-101(c)(3). When exculpatory evidence is equally available to Defendant, as it is to the State, Defendant bears the burden of its discovery. *See State v. Berry*, 366 S.W.3d 160, 179-80 (Tenn. Crim. App. 2011). Because Ms. Bryant's arrest history was equally available to Defendant and the State, Defendant has failed to establish that the State withheld information that was in its exclusive control. Defendant is not entitled to relief.

## 2. Mr. Holloway

Defendant has not established that any notes exist from Mr. Holloway's interview with the State prior to the trial. Mr. Holloway stated he was "pretty sure" that one of the State's attorneys took notes. No notes from the interview were introduced at the motion for new trial hearing. Defendant has failed to establish that the State has withheld any information. Defendant is not entitled to relief.

## B. Vouching for State's Witnesses

Defendant argues that the State improperly vouched for Ms. Bryant and Investigator Jinks. The State argues that it did not improperly vouch for witnesses.

"Expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued." State v. Henley, 774 S.W.2d 908, 911 (Tenn. 1989). "A lawyer should not assert his personal opinion as to the credibility of a witness, or as to the guilt or innocence of an accused." *Id*.

## 1. Ms. Bryant

Defendant's argument that the State vouched for Ms. Bryant is without merit. The exchange referred to between the parties is as follows:

> [Trial Counsel:] But during the time period from the 20th of June into July, when you made the call about the house, is that when you're saying you're actually out buying drugs on your own—
>
> [Trial counsel:] Well, [Defendant] got arrested and was in jail—arrested by [Investigator] Jinks. So you couldn't have bought any drugs from him after that.
> [Ms. Bryant:] He got back out, if I'm not mistaken.
> [Trial counsel:] You're mistaken.
> [The State:] Objection, Your Honor. She's not. He was arrested twice and he got out very quickly the first time. He wasn't taken into custody again until the 31st. So she's correct and [trial counsel] is wrong.
> [The Court]: Very well.

Proof at trial introduced through Investigator Jinks showed that Defendant was arrested on June 28, 2013, but that he was contacting Ms. Bryant about the rental house application on June 30, 2013 and a recorded conversation with Ms. Bryant and Defendant occurred on July 3, 2013. This was not vouching for Ms. Bryant's credibility, but was correcting trial counsel's mischaracterization of evidence that had already been introduced. *See State v. Spurlock*, 874 S.W.2d 602, 617-18 (Tenn. Crim. App. 1993) (explaining that the State has an affirmative duty to prevent or correct false testimony). Defendant is not entitled to relief.

## 2. *Investigator Jinks*

Defendant's claim that the State vouched for Investigator Jinks as an expert is also without merit. Investigator Jinks had already been certified as an expert in drug investigations when there was an exchange about the phone records, and Defendant objected. In response to the objection, the State pointed out that the information asked about was written on the page and Investigator Jinks could read it. Defendant is not entitled to relief.

## C. *Closing Arguments*

Defendant claims that the State played to emotions and prejudices of the jury during closing arguments. The State argues that Defendant has waived this issue because Defendant did not object during the State's closing. *See State v. Jordan*, 325 S.W.3d 1, 57-58 (Tenn. 2010). We agree with the State that the argument has been waived. Defendant points to no unequivocal rule of law that has been breached.

"Appellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal." *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018). However, Tennessee Rule of Appellate Procedure 36(b) allows this Court to take notice of plain errors that were not raised in the trial court. *Smith*, 24 S.W.3d at 282. Defendant is not entitled to plain error relief because he has not established all five factors necessary for plain error review. *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). Therefore, Defendant is not entitled to relief.

## D. *State Comments*

Finally Defendant argues that comments about the status of pre-trial motions and stipulations entered at trial were improper. The State argues that Defendant has failed to show the State's actions amounted to prosecutorial misconduct.

Defendant points to no legal authority regarding the status of pre-trial motions or stipulations. In failing to do so, Petitioner has waived the issues. *See* Tenn. Ct. Crim. App. R. 10(b); *State v. Bonds*, 502 S.W.3d 118, 144 (Tenn. Crim. App. 2016). Defendant is not entitled to relief.

## IV. Lesser-included Offenses

Defendant argues that the trial court erred by failing to include lesser-included offenses in the jury instructions. Specifically, Defendant complains that the trial court failed to charge the jury with the lesser included offense of facilitation. The State argues that the lesser-included offense of facilitation was not fairly raised by the proof and that failure to give the instruction was not error.

Tennessee Code Annotated section 40-18-110(c) provides that a defendant waives any error on the jury instructions by failing to make a special request for a jury charge on a lesser-included offense. The statute states that "[a]bsent a written request, the failure of a trial judge to instruct the jury on any lesser-included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal." *Id*.

Defendant did not request a jury instruction on the lesser-included offense, nor did he object to the exclusion of any lesser-included offenses, therefore the issue is waived. Defendant is not entitled to relief.

Furthermore, plain error review is not justified. Nothing in the record suggest that a substantial right of Defendant has been adversely affected by failure to give the lesser-included offense instruction.

## V. Newly Discovered Evidence

Defendant argues that the trial court erred by failing to grant a new trial due to newly discovered impeachment evidence of Ms. Bryant's criminal arrest and newly discovered exculpatory statements by Mr. Holloway. The State maintains that Defendant is not entitled to a new trial based on newly discovered evidence.

To be granted a new trial based on newly discovered evidence, the defendant must show: 1) he has been reasonably diligent in obtaining evidence, 2) the materiality of the new evidence is apparent, and 3) the evidence is likely to change the outcome of the trial. *State v. Bowers*, 77 S.W.3d 776, 748 (Tenn. 2001). A defendant must show that all three prongs of the test have been met. *Id*. Generally, newly discovered impeachment evidence will not constitute grounds for a new trial. *State v. Singleton*, 853 S.W.2d 490, 496 (Tenn. 1993). The impeachment evidence must be "so crucial to the defendant's

guilt or innocence that its admission will probably result in an acquittal." *Id*. The decision to grant or deny a new trial on the basis of newly discovered evidence is within the discretion of the trial judge. *Bowers* 77 S.W.3d at 748. Accordingly, our standard of review is abuse of discretion. *Id*.

Defendant contends that he only discovered the arrest record of Ms. Bryant after the trial had concluded. The information was in the public record and available to Defendant by statute, therefore Defendant was not reasonably diligent in obtaining the evidence. *See* T.C.A. §40-32-101(c)(3). The jury heard that Ms. Bryant was paid cash for acting as a confidential informant. Audio and video recordings of Ms. Bryant speaking with members of the conspiracy, including Defendant, were introduced at trial. The evidence of Ms. Bryant's arrest history was not so crucial that it would have altered the outcome of the trial. The trial court properly exercised its discretion in not granting Defendant a new trial, and Defendant is not entitled to relief.

Defendant similarly maintains that he did not find out about statements Mr. Holloway made to the State until after the trial. Mr. Holloway's statement, as presented at the motion for new trial, was that Defendant was not present during the Ohio traffic stop and that Defendant "had nothing to do with that." This evidence was consistent with testimony presented at trial by Officer Archer. Officer Archer testified that three people were in the vehicle, Mr. Holloway, Mr. Allen, and Ms. Ferris. Although drugs were found during the stop, no one indicated that the drugs belonged to Defendant. No evidence of any notes or statement contradicting this assertion was introduced at the motion for new trial hearing other than Mr. Holloway's testimony. Multiple people testified during the trial that Defendant was in charge of the conspiracy. Mr. Holloway's statement is not newly discovered evidence. The trial court properly exercised its discretion in not granting Defendant a new trial, and Defendant is not entitled to relief.

## VI.  Speedy Trial

Defendant argues that the trial court erred by refusing to dismiss Defendant's case due to the violation of Defendant's right to a speedy trial. The State argues that Defendant has waived his claim that the case should have been dismissed for violation of the right to a speedy trial because no motion to dismiss was filed.

Defendant filed a motion for a speedy trial in March 2015, roughly one year and four months after the presentments were returned. The record does not show that Defendant filed a motion to dismiss for a violation of his right to a speedy trial. Further, Defendant has not cited to anything in the record where the trial court was asked to dismiss based upon the violation of Defendant's right to a speedy trial. *See State v. John Tyree Lytle*, No. E2003-01119-CCA-R3-CD, 2004 WL 941003, at *2 (Tenn. Crim. App.

- 35 -

May 3, 2004) (determining that the failure to file a motion to dismiss based on a speedy trial violation waives the issue for appellate review), *no. perm. app. filed*. This issue is waived. However, Defendant has requested plain error review. Defendant has not established that a clear and unequivocal rule of law was breached. Defendant is not entitled to relief.

## VII. Pre-Trial Motions

Defendant argues that the trial court erred by not granting Defendant a new trial after failing to hear his pre-trial motions. The State argues that Defendant is not entitled to a new trial.

Tennessee Rule of Criminal Procedure 12(e) states:

> [t]he court shall decide each pretrial motion before trial unless it finds good cause to defer a ruling until trial or after a verdict. The court shall not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal. When factual issues are involved in deciding a motion, the court shall state its essential findings on the record.

Tenn. R. Crim. P. Rule 12(e). The rules also provide that motions to suppress evidence, to request discovery, and to sever charges or defendants must be made before trial. Tenn. R. Crim. P. Rule 12(b). This Court has stated:

> There are many valid reasons underlying the practice of requiring pre-trial motions. It avoids interrupting a trial in progress with auxiliary inquiries which break the continuity of the jury's attention and it avoids inconveniencing jurors and witnesses by requiring them to stand by idly while the court hears a motion to suppress. The practice prevents mistrials from the jury's exposure to unconstitutional evidence. It is to the advantage of both the prosecution and defense to know prior to trial whether certain items will or will not be admitted into evidence. Granting the pre-trial motion might result in abandonment of the prosecution; if the pre-trial motion is denied, then the defendant may either plead guilty and gain whatever concession might be obtained from the State, or change his trial strategy.
>
> Further, the consideration of a motion to suppress after the beginning of the trial can adversely affect the State's right to appeal an adverse ruling. When a pre-trial judgment is adverse to the State, the State's right to appeal is preserved. . . . This prevents an appeal by the State from a judgment

suppressing evidence rendered after the beginning of a trial. Rule 12(e) expressly places a duty on a trial judge to determine the merits of a motion before trial.

*Feagins v. State*, 596 S.W.2d 108, 110 (Tenn. Crim. App. 1979) (internal citations omitted). However, the defendant must demonstrate that the error resulted in harm to his case. *See State v. Thomas Dee Huskey,* No. E1999-00438-CCA-R3-CD, 2002 WL 1400059 at *79 (Tenn. Crim. App. Oct. 11, 2002), *perm. app. denied* (Tenn. Feb. 18, 2003).

Defendant argues that all but one of his pre-trial motions were not heard before trial and that he was prejudiced greatly as a result. The State concedes that the trial court erroneously failed to rule on most of Defendant's motions. The State, however, maintains that Defendant has failed to show harm to his case as a result of the trial court's failure to rule on the pre-trial motions.

### A. Alias

Defendant argues that he was prejudiced by the trial court's failure to rule on his motion to strike alias. The State argues that Defendant makes no argument as to why failure to strike alias would have resulted in prejudice so the issue is waived. We agree with the State.

Defendant's brief does not explain why or how his alias, "D," would be prejudicial to him. Defendant states in his reply brief that the motion itself cited a number of cases. Defendant has not presented any argument with respect to this issue. Consequently, Defendant has waived this issue. *See* Tenn. Ct. Crim. App. R. 10(b); *State v. Bonds*, 502 S.W.3d 118, 144 (Tenn. Crim. App. 2016).

### B. Suppress Evidence from Arrests

Defendant argues that he was prejudiced by the trial court's failure to have a hearing on the motion to suppress evidence. The State argues that Defendant would not have been entitled to a hearing on his motion because Tennessee Rule of Criminal Procedure 47(c) requires that a motion state "with particularity the grounds on which it is made [] and . . . the relief or order sought." We again agree with the State.

"Before an accused is entitled to an evidentiary hearing, the motion must be sufficiently definite, specific, detailed, and non-conjectural, to enable the court to conclude a substantial claim . . . [is] presented." *State v. Burton*, 751 S.W.2d 440, 445 (Tenn. Crim. App. 1988). Defendant's motion to suppress evidence stated that Defendant

moved "this [C]ourt to suppress all evidence seized from him on the date of his arrest. Said evidence was seized without a warrant and without probable cause." The motion did not state which specific evidence other than "all." Further it did not indicate to which arrest the motion is referring. The record shows that Defendant was arrested twice, yet the motion states a singular "date" of arrest. The motion cited no legal authority. As Defendant did not satisfy the requirements of Tennessee Rule of Criminal Procedure 47(c), he cannot show that he would have been entitled to a hearing, thus he cannot show how he was harmed. Defendant is not entitled to relief.

### C. Cell Phone

Defendant argues that any information and evidence obtained from his cell phone without a warrant, including GPS information, should have been suppressed. The State argues that even if evidence from Defendant's cell phone were excluded, it would not have affected the outcome of the trial.

Defendant filed two motions to suppress evidence from "his" cell phone. In one motion, Defendant moved "to suppress this evidence any information obtained from his cell phone without a search warrant including, but not limited to GPS information." In the second motion, Defendant moved to suppress any evidence from "his cell phone." As stated in the record, there were fifteen to twenty cell phones collected by Investigator Jinks during the course of the investigation. By simply stating "his" phone in the motions, it is impossible to know to which phone Defendant is referring. The record shows multiple phone numbers were used by Defendant. During his first arrest, five phones were found in the vehicle with Defendant. Although the record shows that number XXX-XXX-2960 is the only phone number that Defendant has actually claimed, this Court will not conjecture as to which phone number the motions referenced.

As the motion is not sufficient to satisfy the requirements of Tennessee Rule of Criminal Procedure 47(c), Defendant cannot show he would have been entitled to a hearing. Defendant is not entitled to relief.

### D. Sever Unrelated Charges

Defendant argues that the trial court erred by failing to rule on the motion to sever the failure to appear charges in Counts 15, 25, and 36. The State argues that Defendant was not prejudiced by the trial court's failure to rule on the motion to sever charges.

Defendant filed a motion to sever the failure to appear charges in Count 25 and Count 26. Count 15 is not included in the motion to sever; therefore any argument regarding Count 15 is waived. *See Spicer v. State* 12 S.W. 3d 438, 443 (Tenn. 2000).

- 38 -

Even if the trial court had ruled on the motion and severed Count 25, the jury would have heard evidence regarding Count 15. Both counts were for failure to appear for driver's license charges. The jury acquitted Defendant on Counts 15, 25, 26, 17, and 23. The acquittals indicate that the trial court's failure to sever the unrelated charges did not sway jury deliberations. Defendant has failed to show harm to his case. Therefore, Defendant is not entitled to relief.

## VIII. Prior Bad Acts

Defendant argues that the trial court erred by allowing the State to improperly introduce evidence of prior bad acts. Defendant also asks for plain error review. The State argues that Defendant has waived any challenge to Tennessee Rule of Evidence 404(b) because Defendant failed to file a motion to exclude the evidence and failed to object to the introduction of the evidence at trial.

At trial, the State introduced evidence that Defendant failed to appear in court. Under cross-examination, Investigator Jinks testified that while he did not know for a fact, he "believed" Defendant had prior convictions in other jurisdictions. Evidence introduced at trial showed that Mr. McFadden's backpack was found in a vehicle with Defendant during a traffic stop. Defendant did not object to any of this evidence at trial.

Tennessee Rule of Evidence 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes." However, the defendant has the responsibility to "take whatever action [is] reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). In this case, Defendant admittedly raised the issues for the first time on appeal, thereby waiving plenary review.

Defendant makes the argument in his reply brief that there "are clear arguments in [Defendant's] brief that demonstrate the five factors required to establish plain error." Defendant then simply lists the five factors. Defendant fails to cite to the record or his brief. Defendant cites no legal authority that shows the factors have been established. Defendant has not pointed to a clear and unequivocal law that has been breached. Defendant is not entitled to plain error relief.

## IX. Perjured Statements

Defendant argues that the trial court erred by failing to grant Defendant a new trial due to perjured statements by State witnesses. Defendant asks for plain error review. The State maintains the Defendant is not entitled to relief.

As stated above, Defendant fails to show that any perjured statements were made. Defendant also fails to show that any clear and unequivocal rule of law was breached. Defendant is not entitled to relief.

## X. Sufficiency of Evidence

Defendant argues that the evidence presented at trial was insufficient to support each of his convictions. The State argues the evidence was sufficient to support Defendant's convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *Smith*, 24 S.W.3d at 279). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *Dorantes*, 331 S.W.3d at 379; *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Tennessee Code Annotated section 39-12-103(a) defines conspiracy as follows:

The offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

As charged in this case, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver, or sell the controlled substance." T.C.A. § 39-17-417(a)(4). Heroin, oxycodone, and oxymorphone are all controlled substances. T.C.A. §§ 39-17-406(c)(11) - 408(b)(1)(M)-(N).

Defendant asserts that his convictions relied heavily on accomplice testimony. A conviction "may not be based upon the uncorroborated testimony of an accomplice to the offense." *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001). This Court has explained:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that that corroboration extend to every part of the accomplice's evidence.

*State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn. Crim. App. Sept. 24, 1992).

Defendant maintains that the majority of the evidence came from testimony of his alleged accomplices, that any testimony from Ms. Bryant is suspect, that he was never found in possession of any drugs, and that all circumstantial evidence against him was unlawfully obtained. Ms. Bryant completed a rental application on behalf of Defendant. Recorded phone conversations revealed that Defendant would pay any fees or rent associated with the rental house and give Ms. Bryant heroin in exchange for her completion of the application.

Additionally, a recorded phone conversation between Mr. Green and Ms. Bryant stated that "D" was returning from Detroit. Investigator Jinks testified that "D" referred to Defendant. Investigator Jinks also testified that he heard Ms. Maples and Mr. Green refer to Defendant as "D" when Investigator Jinks arrested Defendant. Investigator Jinks also saw Defendant at multiple properties associated with the conspiracy. Therefore, the record shows that the testimony of Ms. Maples, Ms. Huffaker, and Mr. Ford were amply corroborated.

Each of the co-conspirators testified that Defendant was in charge of a network that trafficked controlled substances from Detroit to Knoxville. Recorded phone calls

and text messages corroborated that Defendant was in charge of the drug network. The controlled buys took place within drug-free zones. Defendant answered the same phone number used by Ms. Bryant to set up the controlled buys with Mr. Allen. Moreover, there was testimony from Ms. Bryant and Investigator Jinks that Defendant had taken over Mr. Allen's activities. Multiple people testified that Defendant delivered heroin and opiate pills to members of the conspiracy. Officers seized drugs at locations where Defendant was known to frequent.

It is reasonable that a jury could conclude that Defendant possessed heroin, oxycodone, and oxymorphone with the intent to sell and deliver them and that he had entered into a conspiracy with the intent to do the same. The evidence is sufficient to support his convictions. Defendant is not entitled to relief.

### XII. Jury Instructions

Defendant argues that the trial court erred by instructing the jury on the lesser-included offense of simple possession for conspiracy. The State argues that instructing the jury on the lesser-included offense of simple possession was harmless.

An offense is a lesser-included offense of the principle offense charged when "all of its statutory elements are included within the statutory elements of the offense charged." T.C.A. § 40-18-110(f). This Court has held that simple possession of a controlled substance is not a lesser-included offense of conspiracy to possess a controlled substance with the intent to manufacture, deliver or sell. *State v. Leslie Price [Ellis]*, No. 97, 1987 WL 15529, at *3 (Tenn. Crim. App. Aug. 11, 1987) *no perm. app. filed*. However, errors in instructions about lesser-included offenses are subject to harmless error analysis. *State v. Williams*, 977 S.W.2d 101, 105 (Tenn. 1998). Reversal is only required "if the error more probably than not affected the judgment to the defendant's prejudice." *Id*. When a jury convicts the defendant of the charged offense, to the exclusion of all lesser-included offenses, errors in the lesser-included offense instructions are harmless. *Id*. at 106-07.

In this case, the jury convicted Defendant of the charged offenses on all counts when it returned guilty verdicts, excluding every lesser-included offense. As charged, the jury must reach a verdict on the charged offense before considering the lesser-included offenses, and this Court presumes that the jury followed the instructions. *Id*. Therefore, the trial court's erroneous instruction that simple possession was a lesser-included offense of the conspiracy counts was harmless.

### XIII. Cumulative Error

- 42 -

Defendant argues that the trial court erred by failing to find that Defendant is entitled to a new trial based on cumulative errors. The State argues that Defendant is not entitled to cumulative error relief. We agree with the State.

The cumulative error doctrine recognizes that multiple errors in trial proceedings, while harmless in isolation, may have "a cumulative effect on the proceedings so great as to require reversal." *Hester*, 324 S.W.3d at 76. This is to preserve a defendant's right to a fair trial. *Id*. The strength of the State's case must also be considered when reviewing cumulative error. *Id*. at 77.

We have found two harmless errors, the trial court's failure to sever unrelated charges, and the trial court's error in instructing the jury that simple possession is a lesser-included offense of conspiracy. As well, we found an error in the jury instructions as to Counts 3 and 4. It is hard to see any cumulative affect the errors would have had in the trial proceedings. The jury acquitted Defendant on the unrelated charges, and found Defendant guilty on the charged offenses, excluding every lesser-included offense. We have concluded that Defendant's convictions as to Counts 3 and 4 must be vacated, but with the overwhelming strength of the State's evidence, we find that Defendant is not entitled to cumulative error relief.

## Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed in part and reversed in part. We vacate Defendant's convictions in Counts 3 and 4 and remand to the trial court for entry of judgments dismissing Counts 3 and 4.

_____
TIMOTHY L. EASTER, JUDGE

- 43 -